# United States Court of Appeals
## For the First Circuit

No. 24-1651

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIE RICHARD MINOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Chief Judge,
Rikelman and Aframe, Circuit Judges.

    Karen A. Pickett, with whom Pickett Law Offices, P.C., was on brief, for appellant.

    Lindsay B. Feinberg, Assistant United States Attorney, with whom Craig M. Wolff, Acting United States Attorney, was on brief, for appellee.

January 27, 2026

**BARRON, <u>Chief Judge</u>**.  In this appeal, Willie Richard Minor challenges his conviction under 18 U.S.C. §§ 924(a)(2) and 922(g)(9).[1]  Section 924(a)(2) provides that whoever "knowingly violates" § 922(g)(9) is subject to a maximum term of imprisonment of ten years.  Section 922(g)(9) makes it "unlawful" for a person convicted of a "misdemeanor crime of domestic violence" to possess a firearm.

At the time of Minor's charged conduct, 18 U.S.C. § 921(a)(33)(A) defined a "misdemeanor crime of domestic violence" as an offense that "is a misdemeanor under Federal, State, or Tribal law" and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse" or other intimate or familial relation.[2]  The predicate misdemeanor for Minor was his 2010 conviction under Maine law for simple assault of his then-wife.

---

[1] We refer to and cite § 924(a)(2) in this opinion as it existed at the time of Minor's charged conduct.  The Bipartisan Safer Communities Act relocated the relevant portion of that provision to § 924(a)(8) and increased the maximum term of imprisonment for its violation.  Pub. L. No. 117-159, § 12004, 136 Stat. 1313, 1329 (2022).

[2] We refer to and cite § 921(a)(33)(A) in this opinion as it existed at the time of Minor's charged conduct.  The Bipartisan Safer Communities Act amended the definition of a "misdemeanor crime of domestic violence" to include offenses by "a person who has a current or recent former dating relationship with the victim."  Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332 (2022).

Minor bases his challenge to his federal conviction in part on the ground that, under the Second Amendment to the U.S. Constitution, § 922(g)(9) is unconstitutional on its face and as applied to him. He also contends, however, that even if § 922(g)(9) does not violate the Second Amendment, his conviction cannot stand because evidence that he wanted to introduce at his criminal trial in the United States District Court for the District of Maine was wrongly excluded. We affirm.

**I.**

The path to this appeal is quite lengthy. In 2009, Minor was charged under Maine law with "Domestic Violence Assault." United States v. Minor (Minor II), 63 F.4th 112, 115 (1st Cir. 2023). The alleged victim of the assault was Minor's then-wife. Id.

After watching an advice-of-rights video that stated that an individual could lose their right to possess firearms if they were convicted of certain offenses -- including offenses "that involve the use of force" against a spouse -- "Minor refused to plead guilty to the domestic violence charge." Id. The state prosecutor thereafter agreed to reduce the charge to a simple assault charge and strike any reference in it to either the alleged victim or domestic violence. Id. Minor pleaded no contest to the simple assault charge in 2010. Id.

Seven years later, after revealing in an interview with local police that he owned a gun, Minor was charged under 18 U.S.C. § 924(a)(2) with having "knowingly violate[d]" § 922(g)(9) based on his prior Maine-law conviction for simple assault. Id. at 114. Minor pleaded not guilty to this federal charge but was convicted of it following a jury trial in December 2017. He then appealed the conviction to our Court.

While Minor's appeal was pending in our Court, the Supreme Court of the United States decided Rehaif v. United States, 588 U.S. 225 (2019). The defendant there had been charged under § 924(a)(2) with "knowingly violat[ing]" § 922(g)(5), which makes it unlawful for a person who is an "alien" "illegally or unlawfully in the United States" to possess a firearm. Id. at 227-28 (first quoting 18 U.S.C. § 924(a)(2); and then quoting id. § 922(g)(5)). The Court interpreted the word "knowingly" in § 924(a)(2) to mean that, to secure a conviction under §§ 924(a)(2) and 922(g), the government had to prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 237.

In the wake of the Supreme Court's ruling, the parties agreed that Minor's 2017 conviction under §§ 924(a)(2) and 922(g)(9) should be vacated and remanded, and we disposed of the appeal by doing so. Minor II, 63 F.4th at 115. The government then sought and secured a superseding indictment, this time

- 4 -

alleging that Minor "knew that he had been previously convicted of [a] misdemeanor crime of domestic violence."  Id.

Minor moved to dismiss the superseding indictment, but the District Court denied his motion.  Minor was then tried before a jury under the new indictment.  See id.

Minor had stipulated to most of the elements of §§ 924(a)(2) and 922(g)(9), including that the gun had been moved in interstate commerce, that he "knowingly possessed" it, and that the victim named in his original state-law assault complaint was his spouse at the time.  Id.  He testified at his federal criminal trial in the District of Maine, however, that he understood that in the state proceedings in 2010 he had been "convicted of a simple assault," not "a domestic."  Id.

Minor also sought to introduce evidence that, notwithstanding his 2010 state-law conviction for simple assault, he believed that he could possess a firearm as a result of his plea arrangement in that state criminal case.  Id. at 115-16.  That evidence included proffered testimony from George Hess, the attorney who had represented him during the state criminal proceedings.  Id. at 116.  In that testimony, Hess purportedly would have averred that the assistant district attorney who had prosecuted Minor's state-law assault charge told Hess that "Minor would still be able to possess a firearm if he pled guilty to the . . . simple assault."  Id. at 116.

The District Court excluded the proffered testimony, and the jury found Minor guilty, resulting in him again being convicted under §§ 924(a)(2) and 922(g)(9) based on his having possessed a gun after having been convicted in 2010 under state law for a simple assault in which his then-wife was the victim. Id. at 116-17. He then appealed the new federal conviction.

A divided panel of this Court vacated the conviction based on perceived errors in the jury instructions that were related to how the panel determined Rehaif applied to Minor's case. See United States v. Minor (Minor I), 31 F.4th 9, 20-21 (1st Cir. 2022). However, the government petitioned for rehearing en banc, and the petition was granted. See Minor II, 63 F.4th at 117.

In our en banc ruling, we clarified the type of knowledge that is sufficient under §§ 924(a)(2) and 922(g)(9) to establish that a defendant knew "that he was in the category of persons convicted of a misdemeanor crime of domestic violence." Id. at 114. In doing so, we rejected Minor's argument that, under Rehaif, the word "knowingly" in § 924(a)(2) required the government to prove that he knew that the simple assault offense for which he had been convicted was classified as a misdemeanor crime of domestic violence under federal law. Id. at 120. We held instead that, in accord with Rehaif, a defendant's knowledge that he "belonged to the relevant category of persons" is established if his "knowledge about his prior conviction included everything

necessary to satisfy" the statutory definition of that term. Id. at 120-21; see also 18 U.S.C. § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence").

In other words, we explained that "knowingly" in § 924(a)(2) requires only, as to the "category of persons" convicted of a misdemeanor crime of domestic violence, that the defendant knew the characteristics of his previous offense that brought it within the statutory definition of a "misdemeanor crime of domestic violence." See Minor II, 63 F.4th at 121. "Knowingly," we explained, did not require the defendant also to know that his prior offense was so defined under federal law. See id. at 124.

Drawing on Congress's definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A), we then explained that the District Court may

> instruct the jury that the Government must prove that Minor knew, at the time he possessed a gun, that: (i) he had been previously convicted of an offense that "is a misdemeanor under Federal, State, or Tribal law"; (ii) in order for him to have been convicted of the prior offense at a trial, the government would have had to prove beyond a reasonable doubt that he "use[d] or attempted [to] use . . . physical force"; and (iii) the victim of that offense was, at the time of the offense, his "current or former spouse."

Id. (alterations in original) (quoting 18 U.S.C. § 921(a)(33)(A)).

- 7 -

We concluded, however, that the instructions used in Minor's trial in the District of Maine failed to properly describe those elements of a "misdemeanor crime of domestic violence." Id. at 121. We further concluded that the government had not made an argument that this instructional error was harmless beyond a reasonable doubt. Id. at 124. Accordingly, we vacated Minor's conviction under §§ 924(a)(2) and 922(g)(9) and remanded the case for further proceedings consistent with our decision. Id. at 125-26.

On remand, Minor renewed his effort to dismiss the superseding indictment, arguing that under New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), § 922(g)(9) is "facially invalid in defining prohibited persons and as applied to him in violation of the Second Amendment of the United States Constitution[]." The District Court denied his motion, concluding that § 922(g)(9) was sufficiently analogous to the "historical tradition of restricting persons considered to be untrustworthy or dangerous, including persons convicted of violent offenses, such as an assault, from possessing firearms."

A two-day jury trial was held in April 2024. Prior to the trial's start, the government filed a motion in limine to exclude any evidence or argument that, notwithstanding his 2010 state-law conviction for simple assault, Minor thought that he legally was allowed to possess firearms. Such evidence, the

government argued, was irrelevant under Minor II and unfairly prejudicial because it would confuse the issues and mislead the jury. See Fed. R. Evid. 401-03. Minor opposed the motion, contending that he was entitled, under Rehaif, to testify as to "whether he had knowledge that he belonged to a category of persons and why he held that belief."

Relying on our holding in Minor II that the "knowingly" element of the offense did not require the government to prove "that the defendant knew that he could not possess a gun," 63 F.4th at 126, the District Court granted the government's motion in limine and barred Minor from presenting argument or evidence that he "believed he was allowed to possess a firearm." The trial ensued, and the jury again returned a guilty verdict against Minor. Minor was thus convicted for the third time of knowingly possessing a firearm as a domestic violence misdemeanant in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and was sentenced to time served. He then timely filed this appeal.

## II.

We begin with Minor's challenge to the District Court's denial of his motion to dismiss the superseding indictment on the ground that, under the Second Amendment, § 922(g)(9) is "facially invalid" and unconstitutional "as applied to him." Our review is de novo. United States v. Castillo, 158 F.4th 257, 271 (1st Cir. 2025).

**A.**

When an individual's conduct falls within the "plain text" of the Second Amendment, "the Constitution presumptively protects that conduct." Bruen, 597 U.S. at 17. To show that a gun regulation is nonetheless lawful under the Second Amendment, the government bears the burden of "demonstrat[ing] that [the challenged] regulation is consistent with this Nation's historical tradition of firearm regulation." Id.[3]

Following Bruen, but after the District Court issued its decision in this case rejecting Minor's Second Amendment challenge, the Supreme Court decided United States v. Rahimi, 602 U.S. 680 (2024). The case concerned a defendant's challenge under the Second Amendment to his conviction under § 924(a)(2) for knowingly violating § 922(g)(8)(C)(i). Id. at 684-86. That provision makes it unlawful for a person to possess a firearm who is subject to a domestic violence restraining order that "includes a finding that such person represents a credible threat to the

---

[3] We previously upheld § 922(g)(9) against a facial Second Amendment challenge under our then-prevailing means-ends framework. See United States v. Booker, 644 F.3d 12, 22-26 (1st Cir. 2011). Due to the Supreme Court's explicit abrogation of that approach, see Bruen, 597 U.S. at 18-19, our analysis here is not controlled by that prior decision. See United States v. Perez, 89 F.4th 247, 250 (1st Cir. 2023) (recognizing an exception to the law-of-the-circuit doctrine "when an existing panel decision is undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court" (citation modified)).

physical safety of [an] intimate partner" or a child of an intimate partner.  18 U.S.C. § 922(g)(8)(C)(i).

The parties have fully briefed how Rahimi bears on this case, including its instruction that "central to" the inquiry into whether a firearms regulation "is consistent with the principles that underpin our regulatory tradition" is "[w]hy and how the regulation burdens the right."  602 U.S. at 692.  We thus see no need to remand the purely legal question before us for further consideration in light of Rahimi.

**B.**

The District Court assumed, without deciding, that Minor's conduct fell within the Second Amendment's plain text, which states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The government does not contend otherwise on appeal.  We thus proceed to address whether the government has met its burden to show that the restriction on firearm possession set forth in § 922(g)(9) fits within "our 'historical tradition of firearm regulation,'" Rahimi, 602 U.S. at 691 (quoting Bruen, 597 U.S. at 17), while focusing, as Rahimi requires, on why and how the restriction burdens the right, id. at 692.

The government contends that the Supreme Court's decision in Rahimi makes clear that § 922(g)(9) does fit within

- 11 -

that tradition.  The Court explained that the Second Amendment permitted Congress to bar a person from possessing a firearm when subject to a domestic violence restraining order that found that person to "represent[] a credible threat" to the physical safety of an "intimate partner or child."  Id. at 693-700; 18 U.S.C. § 922(g)(8)(C)(i).

The Court relied principally on "two distinct legal regimes . . . that specifically addressed firearms violence": surety and "going armed" laws.  Rahimi, 602 U.S. at 693-98.  Surety laws, the Court summarized, were "[a] form of 'preventative justice'" that "authorized magistrates to require individuals suspected of future misbehavior," including spousal abuse, "to post a bond" which would be forfeit if the individual later broke the peace.  Id. at 695 (quoting 4 William Blackstone, Commentaries on the Laws of England 251 (10th ed. 1787)).  Going armed laws, the Court explained, "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."  Id. at 697 (citation modified).

"Taken together," the Court reasoned, these founding-era measures revealed a tradition of disarming individuals who "pose[] a clear threat of physical violence to another."  Id. at 698.  The Court then determined that § 922(g)(8)(C)(i) "fit[] neatly" within that tradition.  Id.

- 12 -

The Court held that § 922(g)(8)(C)(i) was "relevantly similar" to surety and going armed laws "in both why and how it burdens the Second Amendment right." Id. (quoting Bruen, 597 U.S. at 29). It explained that the measure "restrict[ed] gun use to mitigate demonstrated threats of physical violence," id., but "only once a court has found that the defendant 'represents a credible threat to the physical safety' of another," id. at 699 (quoting § 922(g)(8)(C)(i)). It further noted that, like the surety laws, the disability on firearm possession that § 922(g)(8)(C)(i) imposed was temporary. Id. And it observed that the going armed laws were not meaningfully different in that durational regard, given that they permitted imprisonment, which is a more onerous punishment than disarmament. Id. The Court therefore held that the defendant's Second Amendment-based challenge to § 922(g)(8)(C)(i) failed because "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. at 702.

Our sister circuits have been unanimous thus far in concluding that, given Rahimi, the measure at issue here also fits within our nation's tradition of firearm regulation. See United States v. Simmons, 150 F.4th 126, 132-34 (2d Cir. 2025); United States v. Nutter, 137 F.4th 224, 231-32 (4th Cir. 2025); United States v. Bernard, 136 F.4th 762, 765-66 (8th Cir. 2025); United

- 13 -

States v. Jackson, 138 F.4th 1244, 1253-55 (10th Cir. 2025); United States v. Gailes, 118 F.4th 822, 827-28 (6th Cir. 2024). We agree.

In attempting to make the contrary case, Minor emphasizes that, unlike the defendant in Rahimi, he "has never been found by a court to present a 'clear threat of physical violence to another,'" as his 2010 conviction for simple assault "required no such finding." He thus takes issue with the government's contention that, under Rahimi, this measure (whether on its face or in application to his case) accords with the Second Amendment. As he sees things, unlike the law at issue in Rahimi, § 922(g)(9) disarms individuals based on their past criminal conduct rather than any finding by a court that they present a current threat.[4]

But Minor's conviction for simple assault means that he was found beyond a reasonable doubt to have "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to another person." Me. Rev. Stat. Ann. tit.

---

[4] The government urges us to decline to consider Minor's as-applied challenge to § 922(g)(9); it argues that "a case-by-case approach in assessing the relative danger posed by every domestic violence misdemeanant" under that provision is "unsound in principle and unworkable in practice." In the government's view, § 922(g)(9) is constitutional in "all applications . . . based on Congress's reasoned determination that a person convicted of a misdemeanor crime of domestic violence indicates a danger to the physical safety of others or a special danger of firearm misuse." Because we conclude that the basis for Minor's as-applied challenge fails anyway, we reserve that question for another day.

- 14 -

17-a, § 207(1)(A). There also is no dispute that the victim in that criminal offense was his spouse at the time. It is therefore significant that, in enacting this measure, Congress sought, as the Supreme Court has explained, "to 'close [a] dangerous loophole' in the gun control laws," Voisine v. United States, 579 U.S. 686, 689 (2016) (alteration in original) (quoting United States v. Castleman, 572 U.S. 157, 160 (2014)) (emphasis added), precisely due to the danger that it determined was posed by those who had committed a past misdemeanor offense of domestic violence possessing a firearm. The "[e]xisting felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers" because many perpetrators of domestic violence are charged with and convicted of misdemeanors, not felonies. United States v. Hayes, 555 U.S. 415, 426 (2009); accord Voisine, 579 U.S. at 689; see also Tom Lininger, An Ethical Duty to Charge Batterers Appropriately, 22 Duke J. Gender L. & Pol'y 173, 191-93 (2015) (observing common practice of undercharging domestic violence offenses). So, through § 922(g)(9), Congress "extended" the federal felon-disarmament statute to a specific "class of criminals" who it determined "posed a significant and particularized danger to those around them," United States v. Booker, 644 F.3d 12, 24 n.16 (1st Cir. 2011); see also Simmons, 150 F.4th at 133 (explaining that § 922(g)(9) "disarms people deemed dangerous to the physical safety of others"), as the

- 15 -

provision is aimed at "preventing gun violence in the home" by limiting gun possession by persons "who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship," Booker, 644 F.3d at 25; see also Hayes, 555 U.S. at 427 ("Firearms and domestic strife are a potentially deadly combination nationwide.").

Of course, Minor is right that, unlike the provision at issue in Rahimi, the one at issue here is not dependent on there having been a judicial finding that the person subject to the firearms restriction poses a threat to anyone. But if Minor means to argue that Rahimi itself held that the Second Amendment permits Congress to disarm an individual based on dangerousness only if a court had found that person posed a forward-looking threat of physical violence to another, we cannot agree.

Rahimi did note that under the statute at issue there, a court had to find that the defendant posed a current credible threat to the physical safety of others. But it is clear that the Court was not holding that a judicial finding of a forward-looking threat is required as a constitutional matter for other subsections of 922(g). See Rahimi, 602 U.S. at 693 ("Our analysis starts and stops with Section 922(g)(8)(C)(i) . . . ."). Rather, the Court reiterated that, to satisfy the Second Amendment, a gun regulation need only be "'relevantly similar' to laws that our tradition is

understood to permit." Id. at 692 (quoting Bruen, 597 U.S. at 29).

Moreover, Rahimi made clear that the modern firearms regulation need not be a "dead ringer" for its historical forebearers "to pass constitutional muster." Id. at 692 (quoting Bruen, 597 U.S. at 30). And we see no impermissible departure from the historical tradition recognized in Rahimi in a measure that treats past criminal domestic abuse as a basis for disarmament due to the threat that the abuse will recur.

Congress acted with the understanding in passing this firearms restriction that "[t]he recidivism rate for domestic violence is high," Booker, 644 F.3d at 26; see also Gailes, 118 F.4th at 829 (surveying scholarship), as the Supreme Court itself has recognized: "Domestic violence often escalates in severity over time," Castleman, 572 U.S. at 160 (emphasis added). And Minor does not himself dispute that factual predicate for Congress's determination about the danger posed by a person possessing a firearm who had been convicted of a misdemeanor offense of domestic violence. This measure thus accords with our tradition of enacting measures -- like the surety and going armed laws -- that "restrict[] gun use to mitigate demonstrated threats of physical violence." Rahimi, 602 U.S. at 698.

We note, too, that the restriction on firearm possession imposed by § 922(g)(9) applies only once a defendant has been

- 17 -

convicted beyond a reasonable doubt of a misdemeanor crime that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" committed against a person with whom they share a familial or intimate relationship. 18 U.S.C. § 921(a)(33)(A)(ii). In that respect, the disqualification at issue aligns with the surety and going armed laws even more closely than § 922(g)(8)(C)(i) did. The relevant judicial determination requires proof beyond a reasonable doubt, as opposed to the lesser quantum of evidence often used in civil restraining orders. Cf. Rahimi, 602 U.S. at 748 (Thomas, J., dissenting) (arguing § 922(g)(8) is not consistent with our historical tradition of firearm regulation because it "does not require a finding that a person has ever committed a crime of domestic violence" and "is not triggered by a criminal conviction or a person's criminal history, unlike other § 922(g) subsections" (citing § 922(g)(9))).

In addition, like the historical measures that the Court looked to in Rahimi (the surety and going armed laws), § 922(g)(9) does not impose a permanent prohibition on firearm possession. A person convicted of a misdemeanor crime of domestic violence may possess guns "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored," provided that such "pardon, expungement, or restoration of civil rights" does not "expressly provide[] that

the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added). By comparison, going armed laws permitted forfeiture for a potentially indefinite period, as individuals could be disarmed for the duration of their imprisonment -- a term that was subject to "the king's pleasure." 4 William Blackstone, Commentaries on the Laws of England 149 (12th ed. 1795); see also Rahimi, 602 U.S. at 699 (explaining that, because "imprisonment was permissible [under the going armed laws] to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible").[5]

We recognize that, in many circumstances, the duration of the disarmament under § 922(g)(9) may be longer than that under § 922(g)(8), which was the measure at issue in Rahimi. But Rahimi's reasoning still applies to § 922(g)(9) because the regulation before us is subject to a restoration of rights.[6]

---

[5] We need not decide here whether our conclusion would change if § 922(g)(9) had no provision permitting restoration of gun rights under some circumstances.

[6] We do not find meaningfully different, for the purposes of this facial constitutional challenge to § 922(g)(9), the fact that the disability in § 922(g)(8) ceases automatically upon the expiration of the predicate court order. Sureties, in the founding era, could be discharged automatically upon the conclusion of a specified term (such as a limited term "for one or more years, or for life") or by an order of the court upon a finding of "sufficient cause." 4 Blackstone (12th ed.), supra, at 253-54.

- 19 -

Minor also appears to argue that § 922(g)(9) is unconstitutional as applied to him because "[t]here was no evidence that [he] had used the gun outside of his home," which is a place that he asserts is "a sacrosanct area for protection under the Second Amendment." But the Supreme Court rejected this very argument in Rahimi. It observed that its decision in District of Columbia v. Heller does not "establish[] a categorical rule . . . prohibit[ing] regulations that forbid firearm possession in the home" and in fact recognized that "many" prohibitions that forbid such possession, "like those on the possession of firearms by 'felons and the mentally ill . . .' are 'presumptively lawful.'" Rahimi, 602 U.S. at 699 (quoting Heller, 554 U.S. 570, 626, 627 n.26 (2008)).

For these reasons, we conclude, based on Rahimi, that § 922(g)(9) "fits within our regulatory tradition." Id. at 698. Accordingly, we reject Minor's Second Amendment-based challenge to his conviction.

**III.**

Minor separately argues that we must vacate his conviction because the District Court improperly excluded evidence "concerning his belief that he was allowed to possess a firearm." We review a district court's decision to "exclude evidence, including rulings on motions in limine, for abuse of discretion." United States v. Coleman, 149 F.4th 1, 28 (1st Cir. 2025) (quoting

- 20 -

United States v. Brown, 510 F.3d 57, 66 (1st Cir. 2007)). In the event there was an abuse of discretion, the conviction must be vacated "unless the error was harmless." Castillo, 158 F.4th at 272 (quoting United States v. García-Sierra, 994 F.3d 17, 26 (1st Cir. 2021)). We review de novo whether the exclusion of evidence violated a defendant's federal constitutional right to present a defense. Coleman, 149 F.4th at 28.

**A.**

In Minor II, "we eschew[ed] opining preemptively on" the admissibility of testimony by Minor regarding his subjective belief of whether he could lawfully possess a gun. 63 F.4th at 126. But, we observed, to prove that the defendant acted "knowingly" under § 924(a)(2), the government need not prove "that the defendant knew that he could not possess a gun," because, "[a]s to the alleged lack of that knowledge, ignorance of the law is no defense." Id.

Before trial, the government filed a motion in limine to exclude any evidence or argument that Minor thought that, notwithstanding his 2010 state-law conviction for simple assault, he legally was allowed to possess firearms. The District Court conditionally granted the government's motion in limine at the outset of the two-day trial held in April 2024 by ordering Minor's attorney not to mention in his opening statement or during cross-examination of the government's witnesses whether Minor

"believed he could possess a firearm in November 2016 or why Minor held that belief." Then, before Minor took the stand to testify, the District Court unconditionally granted the government's motion in limine and excluded "any evidence and argument that [Minor] believed he was allowed to possess a firearm."

**B.**

Minor argues that, in granting the government's motion in limine, the District Court "contravene[d] the requirements of Rehaif" by excluding evidence "that he did not have the requisite 'knowledge' of his status as having been convicted of a misdemeanor crime of domestic violence" due to an "innocent mistake." Our decision in Minor II, he argues, "did not eliminate the concept of a defendant's 'innocent mistake' as it affects mens rea." Minor maintains that his belief that his 2010 Maine-law conviction for simple assault "did not constitute a domestic assault on his former wife" was an "innocent mistake" and thus that this belief provides the basis for "a valid defense" that he lacked "knowledge of his status as a domestic violence misdemeanant." For that reason, he argues, the "severe limitations" on his testimony "violated his Sixth Amendment right to present a full and fair defense" and "completely vitiated [his] defense."

Minor's argument fails to appreciate the difference between two related but "quite different situations" in which a misunderstanding of the law leads to a mistaken view that one's

conduct is not unlawful. Rehaif, 588 U.S. at 234. The first of these situations is when "a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." Id. (quoting 1 Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law, § 5.1(a) at 575 (2d ed. 1986)). The second is when a defendant has the requisite mental state for the commission of the offense but, based on a misunderstanding of the law, "claims that he was unaware that such conduct was proscribed by the criminal law." 1 Wayne R. LaFave, Substantive Criminal Law, § 5.6(d) at 545-46 (3d ed. 2018).

In each situation, the defendant claims a mistake of law. Only in the first situation, however, does the "knowingly" element of the offense give the defendant a valid defense based on the misunderstanding. The reason is that, in the second situation, the defendant cannot overcome the reality that -- as the familiar saying goes -- ignorance of the law is no excuse. As the Supreme Court explained in Bryan v. United States, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." 524 U.S. 184, 193 (1998) (footnote omitted). That is because "the background presumption that every citizen knows the

law makes it unnecessary to adduce specific evidence to prove that 'an evil-meaning mind' directed the 'evil-doing hand.'" Id.

It is usually an "easy task" to identify the type of situation a defendant is in based on their asserted mistaken understanding, 1 LaFave, supra, § 5.6(d) at 546, though, we recognize, "[d]ifficulties" may "arise when [a] statute is unclear as to the extent of the mental state requirement," id. at 546 n.64. There is no such difficulty here, however, because we clarified the scope of the mens rea requirement under §§ 924(a)(2) and 922(g)(9) in Minor II in a way that makes Minor's position untenable.[7]

To that point, as we explained in Minor II, a defendant knows that he is in the "category of persons convicted of a misdemeanor crime of domestic violence" when his "knowledge about his prior conviction included everything necessary to satisfy" the definition of a misdemeanor crime of domestic violence under § 921(a)(33)(A). 63 F.4th at 121. Thus, the requirement that a defendant know that he bore the status of a person convicted of a misdemeanor crime of domestic violence, for purposes of

---

[7] For similar reasons, Minor's argument that the District Court's ruling "contravenes the requirements of Rehaif and other federal courts" is unpersuasive. His claim essentially repackages the argument that we rejected in Minor II. See 63 F.4th at 120 (holding Rehaif does not require the government to prove that a defendant "knew that the assault crime of which he had been convicted was classified as a misdemeanor crime of domestic violence").

§§ 924(a)(2) and 922(g)(9), can be established by knowledge of the facts that constitute the offense labeled a "misdemeanor crime of domestic violence."  It follows that the word "knowingly" in § 924(a)(2) does not require the government to prove, with respect to § 922(g)(9), that the defendant knew that his prior offense was labeled a "misdemeanor crime of domestic violence" or qualified as one under federal law.  Id. at 124; see also McFadden v. United States, 576 U.S. 186, 194 (2015) (stating that the knowledge that a substance is a "controlled substance" necessary for a conviction under the Controlled Substance Analogue Enforcement Act of 1986 may be "established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue"); Staples v. United States, 511 U.S. 600, 602 (1994) (holding that conviction for possession of unregistered machinegun required proof "beyond a reasonable doubt that [the defendant] knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun").

Moreover, at trial, the government's case-in-chief relied on our conclusions in Minor II. The government's theory of liability was that Minor knew the characteristics of his 2010 Maine-law conviction for simple assault that qualified it as a misdemeanor crime of domestic violence under federal law -- namely, that it involved the use of force and the victim

- 25 -

was his then-wife.  It did not attempt to prove -- because it had no need to prove -- that Minor also actually knew that offense was so classified under federal law.  See Minor II, 63 F.4th at 120; cf. id. at 121 n.6 (noting that proof that a defendant knew his status as a domestic violence misdemeanant could be established by evidence "that a defendant knew that a previous conviction was classified under federal law as a misdemeanor crime of domestic violence").  Indeed, Minor agreed that he knew his simple assault conviction involved, as an element, the use of force, and he also agreed that he knew the assault, at the time it was committed, was committed against his spouse.

Accordingly, Minor has not shown that the District Court abused its discretion or otherwise erred by excluding Minor's proffered testimony regarding his belief that he lawfully could possess firearms.  Contrary to his contention, Rehaif does not demonstrate that such testimony was relevant to counter the government's theory of mens rea for Minor's knowledge that he belonged to the relevant category of persons -- that Minor knew the characteristics of his predicate offense that brought it within the definition of a misdemeanor crime of domestic violence.  And, Minor II makes clear, the word "knowingly" in the statutory provision setting forth the offense at issue does not support Minor's contention that the government was required to prove that Minor "knew that he could not possess a gun."  Id. at 126.

We note that in excluding the testimony at issue the District Court determined that the testimony was likely to confuse the issues and mislead the jury precisely because it was not relevant. See id. at 124 ("Congress's attempt to tailor prohibitions on gun possession by providing what laypersons might regard as unclear categories while simultaneously requiring that violations of the prohibitions must be knowing creates great opportunities for confusion . . . ."); Fed. R. Evid. 403. But, as we have explained, Minor fails to show that the District Court erred in determining that the testimony regarding his belief that he could possess a firearm was not relevant. We thus discern no basis for concluding that the District Court abused its discretion in making this determination about the need to exclude the evidence to avoid confusion. And for this reason, too, we see no basis for finding in the exclusion of such evidence any violation of Minor's constitutional right to present a defense. See Holmes v. South Carolina, 547 U.S. 319, 326 (2006) ("[T]he Constitution permits judges to exclude evidence" when "its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.").

## C.

Minor also takes issue with the District Court's decision to exclude evidence about his "understanding of the impact of the charge of simple assault on his ability to possess a

firearm." Specifically, he sought to introduce testimony from George Hess, the attorney who represented him during the 2010 state proceedings. As proffered, Hess would have testified that the state assistant district attorney who prosecuted Minor's misdemeanor made representations that assured Hess that Minor would be able to possess a firearm if he pleaded guilty to the simple assault charge. In addition, Minor sought to introduce evidence that, as arranged by his plea, he would be able to possess firearms lawfully.

Minor argues that he was entitled to present this evidence to show that his "good faith reliance on counsel" negated the required mens rea, citing several out-of-circuit decisions for support. See United States v. Scully, 877 F.3d 464, 475-76 (2d Cir. 2017); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193 (2d Cir. 1989); United States v. Miller, 658 F.2d 235, 237 (4th Cir. 1981); United States v. Painter, 314 F.2d 939, 943 (4th Cir. 1963); United States v. Ray, No. 20-cr-110, 2022 WL 1004961, at *1 (S.D.N.Y. Apr. 1, 2022). Good faith reliance on counsel, however, typically has been considered to negate the requisite state of mind for offenses requiring specific intent. See, e.g., Cheek v. United States, 498 U.S. 192, 195, 201-02 (1991) (holding good faith reliance on advice of counsel may negate willfulness for purposes of criminal tax offense). The cases cited by Minor are not to the contrary; each concerns a statute involving

specific intent.  See Scully, 877 F.3d at 475 (fraudulent intent); Beech-Nut Nutrition, 871 F.2d at 1191 (same); Miller, 658 F.2d at 237 (same); Painter, 314 F.2d at 940, 943 (same); Ray, 2022 WL 1004961, at *2 (willful attempt to evade taxes).

The word "knowingly" in the statute at issue in this case, however, permits the knowledge-of-status requirement here to be established by evidence that the defendant knew the characteristics of his prior offense that brought it within the definition of a "misdemeanor crime of domestic violence."  In other words, that term does not require the defendant to know that the offense was classified as a misdemeanor crime of domestic violence for the purposes of § 922(g)(9) or that he would be violating that law if he possessed a firearm.  As a result, Minor has not shown that his attorney having advised him that, despite § 921(a)(33)(A), his prior offense did not qualify as a misdemeanor crime of domestic violence provided him with a defense to the federal crime for which he was charged.  Accordingly, Minor has not shown that the District Court abused its discretion by excluding the evidence about what Minor and his counsel in the 2010 state-court proceedings understood about the effect of Minor's simple assault conviction on his right to possess firearms under federal law.

Minor advances one other ground for claiming evidentiary error. Here, he argues that the District Court erred by refusing to permit Hess to provide testimony that Minor contends would have impeached the credibility of another witness whom the government called and the District Court allowed to testify. That witness, Nicholas Worden, was the assistant district attorney for the State of Maine who prosecuted Minor's simple assault charge. Worden testified that it was "commonly known" that the conviction Minor faced in his state proceedings would subject him to a federal firearm ban.

The problem for Minor here is that he did not base his objection to the exclusion of Hess's testimony in the District Court on the ground that the testimony was relevant to impeach Worden. Minor argued below only that Hess should be allowed to testify as to Minor's understanding of the collateral consequences of his simple assault conviction because Worden's testimony regarding the widespread knowledge that an offense of simple assault committed against a spouse qualified as a misdemeanor crime of domestic violence "opened the door" to a defense of "entrapment by estoppel."

The District Court rejected that argument for permitting Hess to testify. It determined that the circumstances under which Minor entered his guilty plea were not relevant to the elements of

the offense of a "misdemeanor crime of domestic violence" as defined in § 921(a)(33)(A) and that the present prosecution was not a forum for Minor to collaterally attack the prior conviction. Minor does not on appeal dispute <u>that</u> ground for denying his attempt to introduce the Hess testimony. He instead seeks to challenge the denial of his attempt to introduce that testimony on his newly minted impeachment-based ground. As a result, our review is only for plain error. <u>See</u> <u>United States</u> v. <u>Rasberry</u>, 882 F.3d 241, 250 (1st Cir. 2018). But, as Minor has failed to make any argument on appeal that he can meet that demanding standard, we must reject the challenge as waived. <u>See</u> <u>United States</u> v. <u>Benjamin-Hernandez</u>, 49 F.4th 580, 585 (1st Cir. 2022) (defendant whose brief "fails to even mention plain error, let alone argue for its application here," "waives [his] arguments" (quoting <u>United States</u> v. <u>Cruz-Ramos</u>, 987 F.3d 27, 40 (1st Cir. 2021))).

**IV.**

For these reasons, we **<u>affirm</u>** the denial of Minor's motion to dismiss the indictment and Minor's conviction.