**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4541

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DAVID KEITH NUTTER,

Defendant – Appellant.

------------------------------

FOURTH CIRCUIT FEDERAL PUBLIC DEFENDERS,

Amicus Supporting Appellant.

.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:21-cr-00142-1)

Argued:  March 19, 2025                                   Decided:  May 14, 2025

Before KING, AGEE, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge King and Judge Harris joined.

**ARGUED:**  Lex A. Coleman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  William Andrew Glaser, UNITED STATES

DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Wesley P. Page, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Nicole M. Argentieri, Principal Deputy Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Mahogane D. Reed, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; William S. Thompson, United States Attorney, Andrew J. Tessman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

---

2

AGEE, Circuit Judge:

David Nutter argues that 18 U.S.C. § 922(g)(9) violates the Second Amendment. We disagree and therefore affirm his conviction for violating that statute.

I.

In August 2021, Nutter was indicted for violating § 922(g)(9), which prohibits individuals with convictions for "misdemeanor crime[s] of domestic violence" from possessing, "in or affecting commerce, any firearm or ammunition." § 922(g)(9). The term "misdemeanor crime of domestic violence" is defined in § 921(a)(33). With various caveats either not at issue in this case or that will be discussed below, that term means "an offense that . . . is a misdemeanor under Federal, State, Tribal, or local law" and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" committed by certain individuals in specified familial, cohabitation, or dating relationships with the victim. § 921(a)(33)(A).

Nutter's indictment specified that he had three such prior convictions in Ohio that brought him within § 922(g)(9)'s class of persons prohibited from possessing firearms. Those convictions are: (1) a July 1998 conviction for domestic violence on a family or household member, in violation of Ohio Rev. Code Ann. § 2919.25; (2) an August 2002 conviction for domestic violence on a family or household member felony in the fifth degree, in violation of Ohio Rev. Code Ann. § 2919.25(A); and (3) an August 2002 conviction for endangering children (child abuse), in violation of Ohio Rev. Code Ann. § 2919.22(B)(1).

3

Nutter acknowledged that he possessed the firearms identified in the present indictment and did not dispute that he had the foregoing Ohio convictions. Nonetheless, he moved to dismiss the indictment, arguing that § 922(g)(9) was unconstitutional because it violated the Second Amendment.[1]

Applying *District of Columbia v. Heller*, 554 U.S. 570 (2008), and this Court's then-applicable means-end analysis that it had adopted in *Heller*'s wake, the district court denied Nutter's motion. The parties then entered a conditional plea agreement that allowed Nutter to appeal the denial of his motion to dismiss the indictment, and the district court accepted Nutter's guilty plea.

A few weeks after the guilty plea hearing, but before Nutter's sentencing hearing, the Supreme Court decided *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). That decision "rejected . . . as involving 'one step too many'" the means-end analysis that this and other courts had adopted when reviewing Second Amendment challenges post-*Heller*. *United States v. Price*, 111 F.4th 392, 398 (4th Cir. 2024) (en banc) (quoting *Bruen*, 597 U.S. at 19). Given *Bruen*'s holding, Nutter filed a second motion to dismiss his indictment, arguing that under the Supreme Court's framework for analyzing Second Amendment claims, § 922(g)(9) violated the Constitution.

The district court denied the motion, concluding that § 922(g)(9) "fits easily within" the Nation's history and tradition of disarming categories of individuals deemed to be "a

---

[1] Nutter originally had argued that his Ohio convictions did not meet the statutory definition of a "misdemeanor crime of domestic violence." The district court rejected that argument, and Nutter has not raised that issue on appeal, so it is not before us.

threat to the public safety" and thus satisfied *Bruen*'s inquiry. *United States v. Nutter*, 624 F. Supp. 3d 636, 643 (S.D.W. Va. 2022) (internal quotations omitted). In the court's view, "[n]othing in the historical record suggest[ed] a popular understanding of the Second Amendment at the time of the founding that extended to preserving gun rights for groups who pose a particular risk of using firearms against innocent people." *Id.* at 645. In light of its conclusion, the court denied Nutter's motion, leaving his guilty plea intact. Nutter's plea agreement was modified, however, to reserve his right to appeal the denial of his second motion to dismiss.

The district court sentenced Nutter to twelve months' imprisonment and three years' supervised release.

Nutter noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291.

We placed Nutter's appeal in abeyance after the Supreme Court granted a petition for certiorari in *United States v. Rahimi*, No. 22-915, because that case raised a post-*Bruen* challenge to the constitutionality of a similar subsection of 18 U.S.C. § 922(g). In *Rahimi*, the Supreme Court discussed *Bruen* on its way to upholding the constitutionality of 18 U.S.C. § 922(g)(8) against a challenge under the Second Amendment. 602 U.S. 680, 702 (2024). When removing Nutter's case from abeyance, we ordered supplemental briefing so that the parties could address that case and any other relevant intervening authorities.

II.

A.

Before addressing the merits of Nutter's argument, we first define its scope. When questioned at oral argument, Nutter maintained that he was raising both a facial and as-applied challenge to § 922(g)(9). Our review of Nutter's appellate briefs shows otherwise: he raised only a facial challenge.

Nutter's opening brief articulated the sole issue on appeal in terms of a facial challenge, asking the Court to decide "[w]hether 18 U.S.C. § 922(g)(9), analyzed in the light of [*Bruen*], violates the Second Amendment, such that the district court should have granted Nutter's motion to dismiss the indictment charging him with unlawful possession of firearms after having been convicted of misdemeanor crimes of domestic violence two decades prior." Opening Br. 1. Thus framed by Nutter from the outset of his appeal, the issue presented to this Court is whether § 922(g)(9) *itself* violates the Second Amendment. That is, whether prosecutions under that provision are *ever* constitutional. He did not raise the separate question of whether it would violate the Second Amendment to convict *him* under § 922(g)(9) under the unique facts of his case, because anyone convicted under § 922(g)(9) will necessarily have been convicted of at least one misdemeanor crime of domestic violence.

Consistent with how he presented the sole issue, the argument section of Nutter's opening brief addressed how *Bruen* changed the framework for analyzing Second Amendment challenges, why the Nation's history and tradition did "not support the disarmament of domestic abusers," Opening Br. 25, and why *dicta* from *Heller* did not

6

compel a contrary result. And Nutter's brief concluded in kind, asserting, "Nutter's conduct, the simple possession of firearms, is protected by the Second Amendment and there is no deeply-rooted history or tradition in this country of disarming those, like Nutter, who have prior convictions for misdemeanor crimes of domestic violence." Opening Br. 38.[2]

Similarly, Nutter asserted that § 922(g)(9) is unconstitutional "facially or as applied to" him at two places in his supplemental opening brief. Supp. Opening Br. 2, 3. But his arguments in that brief once again asserted only the facial unconstitutionality of § 922(g)(9). *E.g.*, Supp. Opening Br. 2 ("*Rahimi* is a narrow decision that does not make § 922(g)(9) constitutional.").

Under this Court's precedent, Nutter has waived any as-applied challenge to his conviction. He did not raise an as-applied challenge in his opening brief. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief."). Nutter's fleeting and generalized reference to it in his supplemental opening brief was both untimely (given that we had not authorized him to expand the issues on review) and insufficient. *United States v. Bowles*, 602 F.3d 581, 583 n.* (4th Cir. 2010) (observing that an argument raised for the first time in a supplemental brief, and which could have been raised in the initial opening brief, is waived); *Grayson O Co.*, 856 F.3d at 316 (stating that a party also waives an argument "by

---

[2] While "magic words" are not needed, we further note that the phrase "as applied to" Nutter appear only in the procedural history section when quoting his first, pre-*Bruen*, motion to dismiss. Opening Br. 3.

failing to develop its argument—even if its brief takes a passing shot at the issue" (cleaned up)). So too an argument first raised at oral argument is usually untimely. *United States v. Cornell*, 780 F.3d 616, 625 n.2 (4th Cir. 2015).

For these reasons, Nutter's appeal is limited to whether § 922(g)(9) is facially unconstitutional. We leave for another case the question of whether or when as-applied challenges to § 922(g)(9) can be made. *See, e.g.*, *United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024) (holding § 922(g)(1) constitutional on its face, noting that Canada had "expressly disclaimed any sort of as-applied challenge," and thus leaving for another day whether or when an as-applied challenge to § 922(g)(1) could proceed).

## B.

In *Rahimi*, the Supreme Court reiterated that a facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "That means that to prevail, the Government need only demonstrate that [§ 922(g)(9)] is constitutional in *some* of its applications." *Id.* (emphasis added).

## C.

On appeal, Nutter maintains that § 922(g)(9) is sufficiently different from § 922(g)(8) such that the Court cannot reflexively rely on *Rahimi*'s reasoning for upholding the constitutionality of § 922(g)(8) to uphold the facial constitutionality of § 922(g)(9). For example, he observes that *Rahimi* addressed a prohibition, § 922(g)(8), that was necessarily time limited because it regulates individuals with a then-effective restraining order based

8

on domestic violence, while § 922(g)(9) permits the permanent disarmament of an individual found to have committed an array of violent misdemeanor offenses. He also contends that qualifying restraining orders under § 922(g)(8) require findings about the actual or intended use of force while a conviction for some qualifying misdemeanor crimes of violence under § 922(g)(9) may be predicated on a lesser finding of reckless offensive touching. In view of these distinguishing characteristics, Nutter asserts that *Rahimi*'s analysis of historical analogues supporting the constitutionality of § 922(g)(8) does not dictate the outcome in this case.

With *Rahimi* thus cabined, Nutter argues that § 922(g)(9) lacks an adequate foundation in the Nation's history and tradition to show that it is consistent with the Second Amendment. In his view, disarming certain misdemeanants is a relatively recent development for which there is no well-defined historical precedent. Because general concerns of dangerousness—itself an amorphous concept—is not enough under *Bruen* or *Rahimi* to support disarmament, Nutter maintains that § 922(g)(9) has no relevantly similar historical analogues that would support its constitutionality. And, as such, he urges the Court to vacate his convictions and reverse the district court's denial of his motion to dismiss the indictment.

D.

We begin with the text of the Second Amendment, which states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

9

In *Bruen*, the Supreme Court instructed that courts are to apply a "two-step evaluation" to determine whether a provision violates the Second Amendment. *Price*, 111 F.4th at 398 (quoting *Rahimi*, 602 U.S. at 744 (Jackson, J., concurring)). "First, we must ask whether the Second Amendment's plain text covers the conduct at issue. If not, that ends the inquiry: the Second Amendment does not apply." *Id.* "But if it does, then, second, we must ask whether the Government has justified the regulation as consistent with the 'principles that underpin' our nation's historical tradition of firearm regulation." *Id.* (quoting *Rahimi*, 602 U.S. at 692).

1.

The parties have not spilled ink on *Bruen*'s first step, and we need not do so either.[3] When considering the facial constitutionality of § 922(g)(8), *Rahimi* skipped *Bruen*'s first step and proceeded directly to the second step. 602 U.S. at 693–94. That alone could support our taking a similar approach here.

In any event, we observe, as we did in *Canada*, that we "need not—and thus do not—resolve whether" the constitutionality of this provision "turns on the definition of the 'people' at step one of *Bruen*" because it "has a plainly legitimate sweep," regardless of

---

[3]   The Government initially proffered one argument related to *Bruen*'s first step: that Nutter's challenge failed because individuals convicted under this provision are not "law-abiding, responsible" citizens to whom the Second Amendment applies. But in supplemental briefing, it abandoned that argument in light of *Rahimi*'s rejection of a similar argument. *See Rahimi*, 602 U.S. at 701–02 (rejecting the Government's argument that Rahimi was not a member of "the class of ordinary citizens who undoubtedly enjoy the Second Amendment right" because he was "not 'responsible,'" because neither *Heller* nor *Bruen* defined this "vague term" or said anything "about the status of citizens who were not 'responsible'").

how we answer this inquiry. 123 F.4th at 161 (cleaned up). If individuals to whom § 922(g)(9) applies are not part of "the people," then this provision is constitutional under step one of *Bruen*. If individuals to whom § 922(g)(9) applies are part of "the people," then the analysis would turn to step two. Our analysis of step two, which follows below, reveals that there are some circumstances in which § 922(g)(9) is constitutional, meaning that it "has a plainly legitimate sweep." *Canada*, 123 F.4th at 161 (cleaned up). Thus, regardless of how the first step analysis would be resolved here, the statute survives Nutter's facial challenge.

2.

Turning to the second step of *Bruen*, we are instructed to consider whether § 922(g)(9) "is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. If it is, then it falls outside the scope of the Second Amendment. *Id. Rahimi* cautioned that when courts undertake this historical inquiry, they are not looking for "a 'dead ringer' or a 'historical twin'" to the challenged provision, but rather for a "historical analogue." *Rahimi*, 602 U.S. at 692, 701; *id.* at 691 (stating that the Court's Second Amendment cases "were not meant to suggest a law trapped in amber").

The *Rahimi* Court applied these principles to hold that § 922(g)(8) was facially constitutional. In reaching that conclusion, it relied on two separate regulatory concepts—surety and going armed laws—that, in its view, demonstrated a tradition of disarming "those found by a court to present a threat to others." *Id.* at 698; *see also id.* at 694–98 (tracing this history). The Court further acknowledged that these historical analogues were "by no means identical to" § 922(g)(8)," but then observed that they "do[] not need to be."

11

*Id.* at 698. It was sufficient that they were all "'relevantly similar' . . . in both why and how [they] burden[] the Second Amendment right," i.e., they were tailored "to mitigat[ing] demonstrated threats of physical violence" and did "not broadly restrict arms use by the public generally." *Id.* Moreover, both the historical analogues and § 922(g)(8) "involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 699. And the Supreme Court noted that just as surety bonds were "of limited duration," § 922(g)(8) was also temporary, based on the duration of the restraining order (in Rahimi's case, effective for one to two years after release from prison).

3.

Applying *Bruen* and *Rahimi*, to this case, we hold that § 922(g)(9) is facially constitutional. In short, Nutter has failed to show "that no set of circumstances exists under which [it] would be valid." *Salerno*, 481 U.S. at 745; *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (describing the *Salerno* standard as requiring "the law [to be] unconstitutional in all of its applications" to succeed on a facial challenge).

We do so for many of the same reasons the Supreme Court held § 922(g)(8) constitutional in *Rahimi*, and agree with the Sixth Circuit's recent application of *Bruen* and *Rahimi* to uphold the constitutionality of § 922(g)(9) in *United States v. Gailes*, 118 F.4th 822 (6th Cir. 2024). *Accord United States v. Bernard*, No. 23-2808, --- F.4th ---, 2025 WL 1352398 (8th Cir. May 5, 2025) (holding § 922(g)(9) is constitutional on its face under the Second Amendment).

12

At its core, *Rahimi* held that "our Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not" and "allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 700. "Section 922(g)(9), which categorically disarms individuals with valid, domestic-violence convictions, fits well within this historical tradition." *Gailes*, 118 F.4th at 828. As the definition of a "misdemeanor crime of domestic violence" confirms, every individual that § 922(g)(9) would disarm has been convicted of an offense in which they had been adjudicated by a court of law to have used or attempted to use physical force or threatened the use of deadly force against their victim. § 921(a)(33)(A).

Consequently, the historical regulatory tradition *Rahimi* relied on to uphold the constitutionality of § 922(g)(8) under *Bruen*'s framework is materially indistinguishable from how that same tradition would apply to § 922(g)(9). As was true of § 922(g)(8), when enacting § 922(g)(9), Congress was "restrict[ing] gun use to mitigate demonstrated threats of physical violence, just as surety and going armed laws do." *Rahimi*, 602 U.S. at 698. And although none of the Founding Era limitations *Rahimi* relied on match § 922(g)(9) any more than they did § 922(g)(8), *Rahimi* made it clear that they need not do so to be "relevantly similar" for purposes of *Bruen*. 602 U.S. at 692. An "analogue" suffices. *Id.* at 692, 701. Thus, as was true in *Rahimi*, § 922(g)(9)'s purpose and method—i.e., its "why" and the "how"—fall within the Nation's historical tradition. *Id.* at 700–01.

Nor do we find persuasive Nutter's attempts to force daylight between the salient analysis of § 922(g)(8) and § 922(g)(9). True, *Rahimi* noted the temporary nature of the

13

restraining order at issue in § 922(g)(8) as part of its reasoning. *E.g.* 602 U.S. at 699, 702. But that does not meaningfully distinguish § 922(g)(9), at least with regard to a facial challenge, because it still has a "plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449 (internal quotations omitted). Put differently, § 922(g)(9)'s facial constitutionality does not falter in light of this temporal argument because some § 922(g)(9) convictions are brought within relatively close proximity to the predicate misdemeanor conviction and additional fact-specific circumstances—such as the nature or number of the offenses—could otherwise support disarmament. The facts of *Gailes* provide one such clear example even though the legal issue before the court was solely a facial challenge to § 922(g)(9). There, the Sixth Circuit encountered a "serial perpetrator of domestic violence" who had two predicate convictions, the underlying facts giving rise to those convictions involved violent conduct that included kicking and choking his victim, and both convictions were within a "few years" of the subsequent § 922(g)(9) charges. 118 F.4th at 823–24. This combination of facts demonstrates a plainly permissible prosecution under *Rahimi*, which means that Nutter has not satisfied *Salerno*'s "no set of circumstances" standard for showing that a statute is facially unconstitutional. Arguments that a prior conviction should not permanently ban an individual from possessing firearms based on the amount of time that has lapsed since a conviction or a defendant's purported rehabilitation are better suited to as-applied challenges or as policy arguments to Congress to advocate amending the statutory language. They are not concerns that would render § 922(g)(9) unconstitutional on its face.

14

Additional reasons for rejecting Nutter's temporal argument also exist. For example, it ignores that § 922(g)(9) applies only to individuals who have a *qualifying* conviction for a "misdemeanor crime of domestic violence." And § 921(a)(33)(A) defines this term of art in a way that demonstrates that § 922(g)(9)'s scope is not a *per se* permanent ban. Among other things, it would not prohibit firearm possession by those whose convictions have been set aside, pardoned, or expunged, nor would it apply to those who have had their civil rights fully restored, unless the condition of any of those events expressly prohibited firearms-related conduct. § 921(a)(33)(B)(ii). Moreover, if the underlying conviction involved a misdemeanor crime of domestic violence "against an individual in a dating relationship," then the conviction would exclude the defendant from § 922(g)(9)'s scope "if 5 years have elapsed from the later of the judgment of conviction or the completion of the person's custodial or supervisory sentence, if any, and the person has not subsequently been convicted of another such offense." § 921(a)(33)(C).

Further, Nutter's temporal argument also discounts that, at least in part, the Supreme Court's concern with the temporal limits of § 922(g)(8) related to the correspondingly lower standards that apply to obtain a restraining order, while § 922(g)(9)'s longer prohibition flows from a correspondingly higher standard to obtaining a *conviction*. As the Sixth Circuit observed, "[i]f someone who is merely accused of committing domestic violence can be disarmed without offending the Second Amendment, then *a fortiori* someone with a valid conviction can also be disarmed." *Gailes*, 118 F.4th at 829. *Accord* § 921(a)(33)(A)–(B)(i) (setting out certain procedural protections regarding what sort of offenses and convictions satisfy the meaning of § 922(g)(9)). For these reasons, Nutter has

not shown that his argument concerning the length of time an individual may be prohibited from possessing a firearm under § 922(g)(9) compromises its facial constitutionality.

Last, Nutter's argument about the requisite factual findings underlying a misdemeanor crime of violence conviction also fails to cast doubt on the facial validity of § 922(g)(9). Once again, we turn to the high burden Nutter faces when bringing a facial challenge. As the *Gailes* court opined, "[w]e need not mull over all the predicate convictions that could subject one to disarmament under § 922(g)(9) because [the defendant] raises only a facial challenge to the statute. Because there are numerous domestic-violence misdemeanors that do involve violent, physical contact, our Nation's history and tradition support our conclusion that § 922(g)(9) 'is constitutional in some of its applications.'" 118 F.4th at 829 (quoting *Rahimi*, 602 U.S. at 693) (first internal citation omitted). We agree.

## III.

For the reasons set forth above, we hold that § 922(g)(9) survives Nutter's facial challenge and is constitutional. Therefore, the district court did not err in denying his motion to dismiss the indictment, and his judgment of conviction is

*AFFIRMED*.

16