**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

DAVID PAUL MARTINEZ,

*Defendant - Appellant*.

No. 23-432

D.C. No.
3:17-cr-00257-VC-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

ALEX LEON PADGETT,

*Defendant - Appellant*.

No. 23-2417

D.C. No.
1:23-cr-00006-TMB-MMS-1

Appeal from the United States District Court
for the District of Alaska

Timothy M. Burgess, District Judge, Presiding

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

JOEL MICHAEL RYNO,

*Defendant - Appellant*.

No. 23-3426

D.C. No.
3:22-cr-00045-
JMK-MMS-1

Appeal from the United States District Court
for the District of Alaska
Joshua M. Kindred, District Judge, Presiding

Argued and Submitted September 19, 2025
Seattle, Washington

Filed March 18, 2026

Before: William A. Fletcher and Ana de Alba, Circuit
Judges, and Robert Pitman, District Judge.*

Opinion by Judge W. Fletcher

---

* The Honorable Robert Pitman, United States District Judge for the
Western District of Texas, sitting by designation.

# SUMMARY[**]

## Criminal Law / Second Amendment

The panel affirmed three appellants' convictions under 18 U.S.C. § 922(g)(9), which prohibits a person who has been convicted of a misdemeanor crime of domestic violence from possessing a firearm or ammunition.

Appellants argued that § 922(g)(9) violates the Second Amendment facially and as applied.

Rejecting the facial challenge, the panel applied the two-step framework established by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). The panel held that the Second Amendment's plain text presumptively protects domestic violence misdemeanants, but that the Government has overcome that presumption by demonstrating that § 922(g)(9) is consistent with our historical tradition of firearm regulation. The panel concluded that § 922(g)(9) may be constitutionally applied to individuals who have been previously convicted of misdemeanors based on them having used criminal force against their domestic partners.

Rejecting the as-applied challenge, the panel held that § 922(g)(9) categorically disarms individuals convicted of a misdemeanor crime of domestic violence, reflecting Congress's determination that members of a class of convicted criminals are dangerous. The panel therefore held that it need not engage in a misdemeanor-by-misdemeanor

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

inquiry under § 922(g)(9). Section 922(g)(9) is constitutional as applied to Appellants, each of whom was convicted of a misdemeanor crime of domestic violence.

## COUNSEL

Merry J. Chan (argued), Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Ismail J. Ramsey, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; Seth Brickey, Stephen Corso and Christopher D. Schroeder, Assistant United States Attorneys; S. Lane Tucker, United States Attorney; Office of the United States Attorney, United States Department of Justice, Anchorage, Alaska; for Plaintiffs-Appellees.

Carmen A. Smarandoiu (argued), Chief, Appellate Unit; Lara S. Vinnard and Varell L. Fuller, Assistant Federal Public Defenders; Jodi Linker, Federal Public Defender; Federal Public Defenders Office, San Jose, California; Daniel F. Poulson (argued) and Gretchen L. Staft, Assistant Federal Public Defenders; Office of the Federal Public Defender, Anchorage, Alaska; for Defendants-Appellants.

# OPINION

W. FLETCHER, Circuit Judge:

Under 18 U.S.C. § 922(g)(9), a person "who has been convicted in any court of a misdemeanor crime of domestic violence" may not possess a firearm or ammunition. Congress enacted § 922(g)(9) in 1996 to fill a lacuna in federal gun control laws. Although federal law had long prohibited felons from possessing firearms, those prohibitions did not apply to domestic abusers convicted only of misdemeanors, despite the dangerousness evidenced by their abuse.

Joel Michael Ryno, Alex Leon Padgett, and David Paul Martinez (collectively, "Appellants") were convicted of misdemeanor crimes of domestic violence under state law and were later convicted of possessing firearms in violation of § 922(g)(9). Relying on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), they argue that § 922(g)(9) violates the Second Amendment.

We hold that 18 U.S.C. § 922(g)(9) is constitutional.

## I. Background

Ryno told his girlfriend he was going to kill her, held her against the garage door with a gun and a screwdriver while she held their infant child, hit her on the head, pointed a knife at her, and twice stabbed her bedroom door. He was convicted of assault in the fourth degree for "recklessly caus[ing] physical injury" to his girlfriend, in violation of Alaska Statute § 11.41.230(a)(1), a misdemeanor. Two years later, Ryno flipped over a table that hit his girlfriend's thigh, causing pain, abrasion, and bruising. Ryno told her

not to call the police or he would kill himself. He was again convicted of assault in the fourth degree.

After his first domestic violence conviction, a police officer stopped Ryno's vehicle and seized a rifle and ammunition in his possession. After his second conviction, officers seized another firearm. Two months later, after officers found Ryno sleeping behind the wheel of a car parked along a public highway, they seized two additional handguns. Ryno was convicted of one count of possessing firearms in violation of 18 U.S.C. § 922(g)(9).

Padgett pushed his wife into a dresser and hit her in front of her two young children, ages six and nine. One of the children told officers that he hid during the assault because he feared Padgett. Padgett had been consuming alcohol "heavily" for the previous three or four days. He was convicted of assault in the fourth degree, in violation of Alaska Statute § 11.41.230(a)(1). This was Padgett's fourth domestic violence conviction. Previously, Padgett had grabbed his girlfriend by her throat and pulled her over the back of a couch; had pushed a woman to the ground and strangled her until she could not breathe; and had strangled his girlfriend while she sat on a couch with her infant child.

In 2021, after Padgett shot and killed a bear near his home in Alaska, law enforcement seized a rifle and a handgun from his home. He was convicted of one count of possessing firearms in violation of 18 U.S.C. § 922(g)(9).

Martinez pushed his girlfriend into a door during an argument while he held their infant child. Concerned for her safety, his girlfriend called the police. Officers found Martinez running from the couple's home. He told the officers, "I'll sit if you want, but if you put your hands on me then it's on." Martinez was convicted of violating

California's misdemeanor domestic battery statute, Cal. Pen. Code § 243(e)(1).

In 2017, a police officer stopped Martinez for traffic violations. During a consensual search of Martinez's vehicle, the officer found a loaded semiautomatic handgun hidden in the center console. Officers then searched Martinez's home and found several additional firearms, including an AR-15 rifle, as well as ammunition and high-capacity magazines. Martinez was convicted of two counts of possessing firearms in violation of 18 U.S.C. § 922(g)(9).

Appellants argue that 18 U.S.C. § 922(g)(9) violates the Second Amendment. They bring both facial and as-applied challenges.

## II.  Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. We review the constitutionality of a statute de novo. *United States v. Alaniz*, 69 F.4th 1124, 1127 (9th Cir. 2023).

## III.  Discussion

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The amendment "confer[s] an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), and is incorporated against the states through the Due Process Clause of the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010). The Supreme Court has written that certain longstanding prohibitions, including but not limited to "prohibitions on the possession of firearms by felons and the mentally ill," are

"presumptively lawful." *Heller*, 554 U.S. at 626, 627 n.26; *Rahimi*, 602 U.S. at 698–99.

Section 922(g)(9) prohibits any person previously convicted of a misdemeanor crime of domestic violence from possessing firearms or ammunition. 18 U.S.C. § 922(g)(9). The prior conviction must be a misdemeanor under federal, state, or tribal law that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former" member of a domestic relationship. 18 U.S.C. § 921(a)(33)(A). Use of force includes "the knowing or intentional application of force," *United States v. Castleman*, 572 U.S. 157, 170 (2014), as well as "reckless assaults," *Voisine v. United States*, 579 U.S. 686, 692 (2016). Section 922(g)(9) adopts the common-law definition of "force." *Castleman*, 572 U.S. at 162–63, 168.

A prior conviction counts as a misdemeanor crime of domestic violence under § 922(g)(9) only if the defendant was represented by counsel and tried by a jury, unless the defendant validly waived those requirements. 18 U.S.C. § 921(a)(33)(B)(i). In many circumstances, a prior misdemeanor conviction of domestic violence results in a lifetime ban on possession of firearms and ammunition under § 922(g)(9). However, if an individual has a single prior domestic violence misdemeanor conviction from a dating relationship and does not share a child with the victim, the prohibition lasts five years from the later of the judgment of conviction or completion of the sentence, provided the individual is not convicted of another disqualifying offense. 18 U.S.C. § 921(a)(33)(C). The prohibition also generally ends if the "conviction has been expunged or set aside, or is an offense for which the person

has been pardoned or has had civil rights restored." *Id.* § 921(a)(33)(B)(ii).

Before the Supreme Court decided *Bruen*, we held that § 922(g)(9) was consistent with the Second Amendment. *United States v. Chovan*, 735 F.3d 1127, 1130 (9th Cir. 2013), *abrogated on other grounds by Bruen*, 597 U.S. at 17. Now, post-*Bruen*, we join every circuit that has applied *Bruen* and upheld § 922(g)(9) against Second Amendment challenges. *See United States v. Simmons*, 150 F.4th 126 (2d Cir. 2025); *United States v. Jackson*, 138 F.4th 1244 (10th Cir. 2025); *United States v. Nutter*, 137 F.4th 224 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 270 (2025); *United States v. Bernard*, 136 F.4th 762 (8th Cir. 2025), *cert. denied*, 146 S. Ct. 254 (2025); *United States v. Gailes*, 118 F.4th 822 (6th Cir. 2024). Consistent with the holdings of our sister circuits, we hold that § 922(g)(9) is facially constitutional and constitutional as applied to Appellants.

## A.  Facial Challenge

To succeed in a facial challenge, Appellants must show § 922(g)(9) is unconstitutional in all its applications. *See Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In other words, in order to prevail, "the Government need only demonstrate that [the law] is constitutional in some of its applications." *Id.*

*Bruen* established a two-step historical framework to determine whether a firearm regulation violates the Second Amendment. *Bruen*, 597 U.S. at 17, 24. At step one, we must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If it does, then the amendment "presumptively protects that conduct." *Id.* The government can overcome the presumption at step

two by demonstrating that the regulation is consistent with "the Nation's historical tradition of firearm regulation." *Id.*

### 1. Plain Text of the Constitution

The Second Amendment protects "the right of 'the people' to keep and bear arms." *United States v. Duarte*, 137 F.4th 743, 752 (9th Cir. 2025) (en banc) (quoting U.S. Const. amend. II). "The people" includes those "who are part of [the] national community." *Heller*, 554 U.S. at 580 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)); *Duarte*, 137 F.4th at 752–53 (citing *Heller*, 554 U.S. at 580). All three appellants are members of the "national community."

Appellants' status as domestic violence misdemeanants does not remove them from the ambit of the Second Amendment's text. In *Duarte*, we held en banc that felons are "people" who come within the scope of the Second Amendment. *Duarte*, 137 F.4th at 753–55. In *Perez-Garcia*, we repeated our pre-*Bruen* conclusion that "at least one group of misdemeanants—specifically, domestic violence misdemeanants—is 'entitled to some measure of Second Amendment protection.'" *United States v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024) (quoting *Chovan*, 735 F.3d at 1137), *cert. denied*, 145 S. Ct. 2707 (2025).

### 2. Historical Tradition of Firearm Regulation

Although the Second Amendment's plain text presumptively protects Appellants, the Government may overcome the presumption by demonstrating that § 922(g)(9) is consistent with our "historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

*Bruen* allows "reasoning by analogy" to determine whether a modern firearm regulation is "relevantly similar" to historical traditions of firearm regulation. *Id.* at 28–29. Central to this inquiry is "how" and "why" the regulation burdens the Second Amendment right. *Rahimi*, 602 U.S. at 692. The "how" considers "whether modern and historical regulations impose a comparable burden on the right of armed self-defense," and the "why" considers "whether that burden is comparably justified." *Duarte*, 137 F.4th at 755 (quoting *Bruen*, 597 U.S. at 29). "[W]hen a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Rahimi*, 602 U.S. 692 (quoting *Bruen*, 597 U.S. at 30). A modern regulation "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* We primarily look to historical regulations extant in 1791 and 1868 when the Second and Fourteenth Amendments were adopted, though "we may consider pre-and post-ratification history to the extent that it does not contravene founding-era evidence." *Duarte*, 137 F.4th at 755 (citing *Bruen*, 597 U.S. at 35–36, 39).

In *Rahimi*, the Supreme Court recently analyzed historical firearm regulations and rejected a facial challenge to a provision closely related to § 922(g)(9). The Court upheld the constitutionality of § 922(g)(8), which prohibits a person subject to a domestic violence restraining order from possessing a firearm if the order includes a finding that the person "'represents a credible threat to the physical safety of [an] intimate partner' or a child." *Rahimi*, 602 U.S. at 684–85, 690 (quoting 18 U.S.C. § 922(g)(8)(C)(i)). The Court held that § 922(g)(8) fits within the historical tradition of disarming those who "pose[] a clear threat of physical

violence to another." *Id.* at 698. It characterized this tradition as derived from two sets of historical regulations, surety and "going armed" laws. *Id.*

Surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Rahimi*, 602 U.S. at 695. As a "form of preventive justice," surety laws "could be invoked to prevent all forms of violence, including spousal abuse" and "targeted the misuse of firearms." *Id.* at 695–96 (internal quotations omitted) (citing 4 William Blackstone, Commentaries *251–53). "Going armed" laws prohibited "riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land." *Id.* at 697 (quoting 4 William Blackstone, Commentaries *149). The laws "punish[ed] those who had menaced others with firearms" with "forfeiture of the arms . . . and imprisonment." *Id.* (citation omitted).

Section 922(g)(9) is analogous to the surety and going armed laws identified in *Rahimi*. Like those laws, § 922(g)(9) targets people deemed dangerous to the physical safety of others. As noted above, § 922(g)(9) disarms those convicted of a misdemeanor crime of domestic violence that involved "the use or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 921(a)(33)(A). It offers procedural protections, providing that, absent waiver, a defendant must have been represented by counsel and tried by a jury for his state conviction to be disqualifying. 18 U.S.C. § 921(a)(33)(B)(i). Section 922(g)(9) "matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Cf. Rahimi*, 602 U.S. at 699. Further, going armed laws punished those whose past conduct—menacing others with firearms—demonstrated a "threat of physical

violence." *See Rahimi*, 602 U.S. at 698. In much the same way, § 922(g)(9) disarms domestic violence misdemeanants whose past conduct resulting in a conviction demonstrates the same threat. Finally, § 922(g)(9) prevents further violence by domestic violence misdemeanants, much like the surety laws prevented violence, including spousal abuse. *See id.* at 695–97.

Appellants recognize the similarities between § 922(g)(9) and the surety and going armed laws that led the Court to uphold the constitutionality of § 922(g)(8) in *Rahimi*. However, they propose two distinctions between § 922(g)(8) and § 922(g)(9) that, in their view, place § 922(g)(9) outside *Rahimi*'s identified tradition of disarming individuals who pose a clear threat of physical violence. First, they point out that § 922(g)(8) is a temporary ban on firearm possession, while in many circumstances § 922(g)(9) is a permanent ban. Second, they emphasize that § 922(g)(8) requires an individualized judicial determination of future dangerousness. They argue that because § 922(g)(9) disarms individuals convicted of misdemeanors requiring only reckless conduct or common law force, the failure of § 922(g)(9) to require individualized findings of future dangerousness would result in disarming individuals who do not pose a clear threat of physical violence.

These distinctions are unconvincing. The burden on the presumptive Second Amendment right imposed by § 922(g)(9) is roughly comparable to that of § 922(g)(8), and to the degree § 922(g)(9)'s burden is greater, that burden is justified by the past behavior of the defendant. As Appellants concede, in at least some cases § 922(g)(9), like § 922(g)(8), operates as only a temporary ban on firearm possession. 18 U.S.C. §§ 921(a)(33)(B)(ii), (C); *see also Jackson*, 138 F.4th at 1254; *Nutter*, 137 F.4th at 231–32;

*Bernard*, 136 F.4th at 766; *Gailes*, 118 F.4th at 829.  Further, § 922(g)(8) applies to those found to threaten domestic violence and subjected to civil restraining orders but convicted of nothing, whereas § 922(g)(9) applies to those criminally convicted of prior domestic violence.  *Nutter*, 137 F.4th at 232; *Gailes*, 118 F.4th at 829 ("[I]f someone who is merely accused of committing domestic violence can be disarmed without offending the Second Amendment, then *a fortiori* someone with a valid conviction can also be disarmed.").  Finally, § 922(g)(9) disarms individuals who present a clear threat of physical violence, *Nutter*, 137 F.4th at 233; *Gailes*, 118 F.4th at 829, given their past conduct and the likelihood that they will repeat their abuse in the future, *Bernard*, 135 F.4th at 765 (citing *Gailes*, 118 F.4th at 829).

Our decision is reinforced by our decision in *Duarte*, where we rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(1), which permanently disarms convicted felons.  *Duarte*, 137 F.4th at 748, 761.  Duarte argued under *Bruen* that § 922(g)(1) was unconstitutional as applied to nonviolent felons.  *Id.* at 749.  We identified two historical traditions that each independently justified § 922(g)(1): first, "legislatures may disarm those who have committed the most serious crimes," and second, "legislatures may categorically disarm those they deem dangerous, without an individualized determination of dangerousness."  *Id.* at 755; *see also id.* at 761.  Discussing the second tradition, we wrote, "[F]our centuries of unbroken Anglo-American history show[] that legislatures consistently disarmed entire categories of people who were presumed to pose a special risk of misusing firearms," even though "[n]ot all persons disarmed under historical precedents . . . were violent or dangerous persons."  *Id.* at 761 (first quoting *Range v. Att'y Gen.*, 124 F.4th 218, 273 (3d Cir. 2024) (en banc) (Krause,

J., concurring); then quoting *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)). "Indeed, every categorical disarmament law was overbroad—sweeping in law-abiding people who were not dangerous, violent, untrustworthy, or unstable—yet they comported with the Second Amendment." *Id.* (internal quotations omitted) (quoting *Range*, 124 F.4th at 267 (Krause, J., concurring)).

The historical evidence supporting permanent, categorical disarmament of convicted felons under § 922(g)(1) applies equally to § 922(g)(9). We reject Appellants' argument that *Duarte*'s second tradition applies only to felonies. *Duarte* made clear that legislatures historically could "disarm on a categorical basis those who present a 'special danger of misuse' of firearms." 137 F.4th at 761 (quoting *Rahimi*, 602 U.S. at 698). Like § 922(g)(1), § 922(g)(9) permanently disarms a group Congress deemed dangerous—the members of which Congress had ample reason to consider dangerous. Convicted domestic abusers are "especially dangerous and require special attention" in part because "[d]omestic violence . . . leads to more domestic violence." 142 Cong. Rec. 22986 (1996) (statement of Sen. Lautenberg). "[A]ll too often, the only difference between a battered woman and a dead woman is the presence of a gun." 142 Cong. Rec. 22986 (1996) (statement of Sen. Wellstone). Section 922(g)(9) disarms domestic violence misdemeanants without an individualized judicial finding of future dangerousness because § 922(g)(9) reflects Congress's conclusion that "[t]here is no margin of error when it comes to domestic abuse and guns." 142 Cong. Rec. 22986 (1996) (statement of Sen. Lautenberg).

Section 922(g)(9) filled a dangerous gap in gun control laws. *Voisine*, 579 U.S. at 689 (quoting *Castleman*, 572 U.S. at 160). Domestic violence rarely results in a felony

conviction. *See id.* Indeed, felony prosecutions are rarely pursued. *United States v. Hayes*, 555 U.S. 415, 426 (2009). It is often difficult to obtain even a misdemeanor conviction. First, the abuse must be reported. Victims often do not report domestic violence because of fear, a desire to restore the relationship, embarrassment, or a belief that reporting is unhelpful. Michelle Fugate et al., *Barriers to Domestic Violence Help Seeking*, 11 Violence Against Women 290, 298–301 (2003); *see also* Susannah N. Tapp & Emilie J. Coen, U.S. DOJ Bureau of Just. Stat., *Criminal Victimization, 2024*, at 7 (2025) (documenting report rates). Second, a prosecutor must be persuaded to bring charges. Carol E. Jordan, *Intimate Partner Violence and the Justice System*, 19 J. Interpersonal Violence 1412, 1420 (2004) ("There is evidence that victims of domestic violence face low rates of prosecution . . . ."). Third, the prosecution must obtain a conviction, which is often difficult given the evidentiary issues in domestic violence cases. Lauren Bennett et al., *Systemic Obstacles to the Criminal Prosecution of a Battering Partner*, 14 J. Interpersonal Violence 761, 762 (1999) ("Victims' reluctance to cooperate with the prosecution . . . . can make successful prosecution difficult or impossible, especially in cases where there is little physical evidence of the assault." (citation omitted)); Lois A. Ventura & Gabrielle Davis, *Domestic Violence: Court Case Conviction and Recidivism*, 11 Violence Against Women 255, 265 (2005) ("[T]he most common reason a judge dismissed a domestic violence case was that at some point in the process, the victim failed to appear." (internal quotations omitted)).

A history of domestic violence is highly predictive of future violence. *Gailes*, 118 F.4th at 829 (collecting studies); *see United States v. Skoien*, 614 F.3d 638, 644 (7th

Cir. 2010). Domestic violence has a uniquely high recidivism rate. *See* Thomas P. George, *Domestic Violence Sentencing Conditions and Recidivism* 1, 17 (2016) (finding that 55% of individuals jailed for a domestic violence offense in Washington committed another domestic violence offense within five years); Carla Smith Stover, *Domestic Violence Research*, 20 J. Interpersonal Violence 448, 450 (2005) ("Studies have suggested that recidivism rates in domestic violence cases are high with studies estimating 40% to 80% or more of repeat violence . . . ."); Ventura & Davis, *supra*, at 268 (finding that 32.6% of individuals charged with domestic abuse were arrested for another domestic violence offense within one year). Recurring domestic violence is likely to become deadly when a firearm is present. *See* Aaron J. Kivisto & Megan Porter, *Firearm Use Increases Risk of Multiple Victims in Domestic Homicides*, 48 J. Am. Acad. Psychiatry & L. 26 (2020) (concluding that domestic violence victims are five times more likely to be murdered if there is a firearm in the home and that over half of domestic homicides are committed with firearms); Linda E. Saltzman et al., *Weapon Involvement and Injury Outcomes in Family and Intimate Assaults*, 267 JAMA 3043, 3044 (1992) (finding that domestic violence involving firearms is 12 times more likely to be deadly than domestic violence without firearms).

Appellants' facial challenge to § 922(g)(9) therefore fails. We conclude that § 922(g)(9) may be constitutionally applied to individuals who have been previously convicted of misdemeanors based on them having used criminal force against their domestic partners.

## B.  As-Applied Challenges

Appellants also argue that § 922(g)(9) is unconstitutional as applied to them.  A statute is unconstitutional "as applied," when "by its own terms, [it] infringe[s] constitutional freedoms in the circumstances of the particular case."  *United States v. Christian Echoes Nat'l Ministry, Inc.*, 404 U.S. 561, 565 (1972); *see also Perez-Garcia*, 96 F.4th at 1177.

Not every firearm regulation is susceptible to an as-applied challenge.  In *Duarte*, we held that § 922(g)(1) categorically applied to all felons, regardless of whether a particular underlying felony was violent.  *Duarte*, 137 F.4th at 755, 761. We rejected "felony-by-felony litigation" for challenges to § 922(g)(1) because history established that "the government is empowered to regulate guns through categorical restrictions."  *Id.* at 761 (internal quotations omitted) (quoting *Atkinson v. Garland*, 70 F.4th 1018, 1038 (7th Cir. 2023) (Wood, J., dissenting)).

We similarly hold here that § 922(g)(9) categorically disarms individuals convicted of a misdemeanor crime of domestic violence.  Like § 922(g)(1), § 922(g)(9) reflects Congress's determination that members of a class of convicted criminals are dangerous.  Therefore, we hold that we need not engage in a misdemeanor-by-misdemeanor inquiry under § 922(g)(9).  We are not alone in so holding. As we do here, the Second Circuit rejected a defendant's as-applied challenge to § 922(g)(9) based on Congress's power to disarm groups of people without distinguishing between the nature of the offense underlying particular convictions. *See Simmons*, 150 F.4th at 133–34 ("[W]e conclude that the statute is constitutional both facially and as applied to Simmons, who has undisputedly been convicted of a

misdemeanor crime of domestic violence."). Section 922(g)(9) is constitutional as applied to Appellants, each of whom was convicted of a misdemeanor crime of domestic violence.

## IV. Conclusion

Congress enacted § 922(g)(9) to close a dangerous loophole in our gun control laws. In doing so, it legislated against a background of historical traditions of firearm regulation. Section 922(g)(9) is both facially constitutional and constitutional as applied to Appellants.

**AFFIRMED.**